## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NEXT LEVEL RACING LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> DR globalTech, Inc., a Delaware corporation; Digital River, Inc., a Delaware corporation; and Realization Services, Inc., a New York corporation, <br><br> Defendants. | Case No. 25-cv-0747 (SRN/DJF) |

### NEXT LEVEL RACING LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT REALIZATION SERVICES, INC.'S MOTION TO DISMISS

Plaintiff Next Level Racing LLC ("Plaintiff" or "Next Level Racing") respectfully submits this memorandum in opposition to Defendant Realization Services, Inc.'s motion to dismiss (Dkt. 21, hereinafter the "Motion") the Complaint (Dkt. 1), under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I.    Introduction

Next Level Racing initiated this lawsuit against DR Global Tech, Inc. and Digital River, Inc. (collectively, "Digital River") as well as Defendant Realization Services. Digital River has answered the Complaint, while Realization Services has moved to dismiss the two claims asserted against it: Tortious Interference with Contractual Relations and Unfair Business Practices.

1

Realization Services contends that any interference was justified and privileged because it acted as an agent of Digital River and was protected by the economic interest doctrine. Next Level Racing's allegations of malice, however, overcome both defenses. Moreover, other required elements for Realization Services' asserted defenses—such as whether it acted within the scope of its alleged authority as an agent—are premature at this stage.

For these reasons, and those discussed below, Next Level Racing respectfully requests that the Court deny Realization Services' motion to dismiss.

## II.    Next Level Racing's Allegations as to Realization Services

Next Level Racing develops, manufactures, and sells racing and flight simulation products, including gaming racing seats, flight simulation cockpits, and related accessories. (Complaint ¶ 11.) Next Level Racing entered into an agreement with Digital River under which Digital River would provide e-commerce services by processing sales, managing the sales tax (including VAT and GST), and remitting payment to Next Level Racing after deducting applicable taxes and its fee. (Complaint ¶ 12.)

Realization Services is a New York corporation, led by Barry Kasoff, that specializes in liquidations, bankruptcy, and investment banking, among other services. (Complaint ¶¶ 6, 27.) Next Level Racing has alleged that, without its knowledge, Realization Services acquired Digital River and its subsidiaries in or about July 2024. (Complaint ¶ 26.) There are no allegations of any prior relationship between Digital River and Realization Services, and Realization Services concedes as much. (Dkt. 23 at 3, fn. 1.)

At the time Realization Services acquired Digital River, Digital River failed to remit payments owed to numerous merchants, including Next Level Racing, while continuing to process transactions from the same customers. (Complaint ¶ 29.) More specifically, Next Level Racing has alleged that Realization Services advised Digital River to withhold payments due to Next Level Racing. (Complaint ¶ 31.) It has further alleged that when Digital River sent a termination communication to Next Level Racing on August 30, 2024, Digital River had no intention of honoring its payment obligations and nonetheless continued to collect funds from Next Level Racing's consumers without remitting those funds. (Complaint ¶ 32.) As a result of Digital River's conduct—undertaken under the ownership and direction of Realization Services—the amount owed to Next Level Racing increased from approximately $200,000 as of August 30, 2024, to more than $900,000. (Complaint ¶ 33.)

Next Level Racing has clearly alleged that Realization Services directly and wrongfully intended to cause Digital River to breach the agreement with Next Level Racing. Realization Services "advised and caused DR and Digital River to breach their Agreement with Next Level Racing." (Complaint ¶ 57.) Next Level Racing further alleged that "Realization Services, through its **wrongful acts** and conduct alleged herein, **intended to** and did cause a disruption of DR and Digital River's contractual relationship with Next Level Racing," and that "keeping the nearly $900,000 owed to Next Level Racing ultimately and **wrongfully benefited** Realization Services as the owner of Digital River and DR." (Complaint ¶¶ 58, 59 [emphases added].)

Next Level Racing further alleged that the conduct of Digital River and Realization Services were not limited to Next Level Racing, but was instead directed at numerous other entities that had used Digital River as an e-commerce vendor. (Complaint ¶¶ 29, 32.) For example, Digital River allegedly "pre-sign[ed]" revised Master Services Agreements with customers—without their approval—to unilaterally increase its fees and delay payments to merchants. (Complaint ¶ 32.) As alleged, "[t]he wrongful conduct of Realization Services was fraudulent, willful, and/or malicious and demonstrates a complete indifference to or a conscious disregard for the rights of Next Level Racing . . . ." (Complaint ¶ 62.)

## III.    Plaintiff's Pleading Standards

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Notably, "Rule 8 does not require a plaintiff to plead facts tending to rebut all possible lawful explanations for a defendant's conduct." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009).

Under Rule 12(b)(6), courts assess whether a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court considers all facts alleged in the complaint as true when considering a motion to dismiss, and "afford [the plaintiff] all reasonable inferences from those allegations." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). "It is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled ' "give the defendant fair notice of what the

4

claim is and the grounds upon which it rests," ' *id.* (*quoting Twombly,* 550 U.S. at 555, 127

S. Ct. 1955) (alteration omitted), and 'allow [ ] the court to draw the reasonable inference'

that the plaintiff is entitled to relief. *Iqbal,* 129 S.Ct. at 1949." *Braden v*, 588 F.3d at 595.

> To survive a motion to dismiss, a complaint must contain 'enough facts to
> state a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly,*
> 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a
> complaint need not contain 'detailed factual allegations,' it must contain facts
> with enough specificity 'to raise a right to relief above the speculative level.'
> *Id.* at 555, 127 S.Ct. 1955. 'Threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements,' will not pass muster.
> *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
> (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). In sum, this standard
> 'calls for enough fact[s] to raise a reasonable expectation that discovery will
> reveal evidence of [the claim].' *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

*Hankinson v. King*, 117 F. Supp. 3d 1068, 1071 (D. Minn. 2015); *see also Cook v. George's,*

*Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) ("To survive a motion to dismiss for failure to state

a claim, a complaint must allege sufficient facts to state a facially plausible claim to

relief.").

Under these standards, Next Level Racing respectfully requests that the Court deny

Realization Services' motion to dismiss.

## IV.    Plaintiff Has Sufficiently Alleged a Claim for Tortious Interference

"To state a claim for tortious interference under New York law, a plaintiff must

allege: (1) the existence of a valid contract between the plaintiff and a third party; (2) the

defendant's knowledge of that contract; (3) the defendant's intentional procurement of the

third party's breach of the contract without justification; (4) actual breach of the contract;

and (5) damages resulting therefrom." *SOL-MM III LLC v. JPMorgan Chase Bank, N.A.*,

No. 23-cv-6479 (JGK), 2025 WL 936414, at *18 (S.D.N.Y. Mar. 27, 2025); *see also Barnet*

*v. Drawbridge Special Opportunities Fund LP*, No. 14-CV-1376 PKC, 2014 WL 4393320, at *23 (S.D.N.Y. Sept. 5, 2014).[1]

Next Level Racing has alleged that Realization Services—a liquidation and bankruptcy consulting firm—engaged in a scheme to undermine Digital River's contractual relationship with Next Level Racing through its own maneuvering. Specifically, Next Level Racing has alleged the following as to Realization Services: (i) the existence of a valid contract between Digital River and Next Level Racing; (ii) Realization Services' knowledge of that contract; (iii) Realization Services' intentional efforts to cause a breach by directing Digital River to withhold payment owed to Next Level Racing; (iv) the actual breach; and (v) resulting damages, including Digital River's failure to pay approximately $900,000 to Next Level Racing. (Complaint ¶¶ 26-33; 56-62.)

Realization Services contends that its actions were justified and that it cannot be liable for tortious interference because it acted as Digital River's agent and, separately, because of the economic interest defense—based on its alleged ownership of Digital River. However, Next Level Racing's allegations of malice overcome both defenses at the pleadings stage.

---

[1]  Next Level Racing asserted its claim under New York law because (1) Realization Services is a New York corporation with a stated business address in Bedford Hills, New York, and (2) the terms and conditions between Digital River and Next Level Racing specifies the application of New York state law to disputes arising out of the agreement. (Complaint ¶¶ 6, 14; Exhibit 2, § 1.26.)

A.    **Realization Services Was Not Justified in Interfering in the Contract Between Digital River and Next Level Racing**

Realization Services cites *Farkas v. River House Realty Co., Inc.*, 173 A.D.3d 405 (N.Y. App. Div. 2019), for the proposition that justification is a proper ground for dismissal at the pleading stage. The *Farkas* decision, however, primarily turned on the plaintiff's failure to "plead that there was an actual breach of her contract." The decision contains no discussion—nor even a substantive explanation—of what constituted "'justification.'" *Id.* at 406 (quoting *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007)).

Moreover, Realization Services' actions are not justified simply because it alleges they were lawful. "To be sure, lawful behavior, by itself, does not suffice to justify tortious interference. *See, e.g.*, *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492, 496 (1996) ('[A] plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior.')." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129 (2d Cir. 2019).

In *Barnet*, the plaintiffs alleged that a global investment fund interfered with existing contractual rights by transferring $210 million to its Australian affiliates for the benefit of other affiliated creditors. 2014 WL 4393320 at *1. The court noted the plaintiffs sufficiently alleged each required element of tortious interference: that their entity was a party to valid and enforceable contracts with the debtors, that the defendants knew of those contracts, that they diverted funds, and that this caused a breach of repayment obligations under the contracts. *Id.* at *23. While the defendants in *Barnet* attempted to justify their

conduct by claiming that their allegedly wrongful actions were undertaken to ensure the repayment of outstanding loans, the court rejected the defense.  "Defendants' attempt to recharacterize plaintiffs' allegations in terms of defendants' own interest in the repayment of the [loan] improperly asserts factual arguments in the context of a motion to dismiss. Accordingly, defendants' motion to dismiss this claim is denied."  *Id*. at *23.

Next Level Racing has similarly alleged that Realization Services—a liquidation consulting company—directed Digital River to wrongfully retain funds belonging to Next Level Racing that Digital River had no contractual right to keep, including amounts beyond the scope of the agreement and funds collected after any contractual relationship had ended. (Complaint ¶¶ 23-24, 32-33, 42.)  For these reasons, and as discussed in detail below, Next Level Racing has alleged sufficient facts to overcome any asserted justification by Realization Services.

### B.    Next Level Racing's Allegations Overcome Realization Services' Asserted Agency Defense

#### 1.    Next Level Racing's Allegations of Realization Services' Malice Defeat Realization Services' Asserted Agency Defense

Realization Services argues that Next Level Racing fails to state a claim for tortious interference because it acted as a consultant and agent, merely providing business and financial advice to Digital River in the course of that relationship.  However, under New York law, an entity alleged to have interfered with malice may not rely upon the agency privilege.

In *SOL-MM III*, the court denied a motion to dismiss a tortious interference claim asserted against JPMorgan.  2025 WL 936414, at *1.  The plaintiff, an administrative agent

acting on behalf of a group of junior lenders, alleged that the defendants engaged in a scheme–through a series of contractual maneuvers–to secure a windfall by destroying the plaintiff's contractual rights to be repaid on a loan. *Id.* at *1. The plaintiff's complaint included a claim for tortious interference against JPMorgan. *Id.* at *19. In moving to dismiss, JPMorgan argued, in part, that it merely exercised its own contractual rights and lacked any intent to interfere. *Id.* The court disagreed, holding that the allegations, "[c]onsidered together and construed in the light most favorable to the plaintiff," supported the inference that JPMorgan had sought to procure a breach of the plaintiff's agreement and had acted intentionally to undermine the obligations to the plaintiff, in favor of its own interests. *Id.*

Case law cited by Realization Services likewise confirms the malice exception to the agency privilege. "New York law recognizes a privilege whereby one who has an existing economic interest in a business or who acts *as an agent for that business* is not liable for interfering with a contract between that business and a third party *unless such interference was motivated by malice or accomplished by illegal means*." *Maroil, S.A. v. American Intern. Group, Inc.*, 1983 WL 188026, at *1 (S.D.N.Y., Jan. 13, 1983) (emphases added).[2] Under New York law, malice derives from "a wrongful act, done intentionally, without just cause or excuse." *Campbell v. Gates*, 236 N.Y. 457, 460 (1923); *see also*

---

[2]    In *Maroil, S.A.*, which also involved a summary judgment motion rather than a motion to dismiss, the defendants were asserting both the economic interest and agency privilege. The court had initially denied summary judgment so as to allow the plaintiff discovery to explore defendants' malicious or illegal actions that would overcome their claim of privilege. 1983 WL 188026, at *1.

*S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 108 A.D.2d 351, 355  (N.Y. App. Div. 1985).

Next Level Racing has plausibly alleged that Realization Services acted with malice.  Specifically, it has alleged that Realization Services advised Digital River to withhold payments owed to Next Level Racing (Complaint ¶¶ 29, 31); that Digital River had no intention of honoring its payment obligations and nevertheless continued to collect funds from Next Level Racing's customers without remitting payment (Complaint ¶ 32); that Digital River retained funds even after the contract was terminated (Complaint ¶¶ 21, 23-24, 29); and that Digital River has continued to wrongfully withhold approximately $900,000 (Complaint ¶ 33)—all under the direction of Realization Services (Complaint ¶¶ 57-59).

The cases cited by Realization Services are inapposite, as they involve tortious interference claims against corporate officers, not distinct third parties.  Even so, New York law is clear that agency privilege does not shield a corporate officer—let alone a separate entity—who acts with malice.  For example, in *Buckley v. 112 Central Park South, Inc.*, 285 A.D. 331 (N.Y. App. Div. 1954), the court recognized an exception to the agency privilege even for a corporate officer charged with tortious interference.  "[A] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer. It is equally clear that when the corporate officer commits independent tort or predatory acts directed at another, he may not seek refuge behind the mantle of immunity." *Id*. at 334; *see also Navarro v. Fiorita*, 271 A.D. 62, 65 (N.Y. App. Div. 1946) ("A corporate

officer engaged in converting corporate assets is not 'acting generally within the scope of his authority'; and if his action wrongs not merely his principal but also a third party, the third party should be entitled to a remedy."), *aff'd*, 296 N.Y. 783 (1947).

In sum, case law does not permit an interfering agent—including an officer or consultant—to hide behind the agency privilege when acting wrongfully or maliciously.

### 2. Even in the Absence of Malice, Realization Services' Agency Defense Is Premature at this Stage

"[I]f the agent who induces the breach acts outside the scope of his authority, the privilege will not protect him from liability." *Maroil, S.A.*, 1983 WL 188026, at *3; *see also Navarro*, 271 A.D. at 65. The court in *Maroil* further discussed exceptions to the agency privilege, including a party that acts outside the scope of any authority.

> Although New York courts have often described the exceptions to the agent's privilege in a piecemeal, unclear way, several exceptions have emerged. First, an agent may be held liable if in inducing a contractual breach, he commits "individual and separate torts. such as assault, trespass, fraud, conversion, etc." *Greyhound Corp.,* supra, 19 N.Y.S.2d at 242. Second, the agent may be held liable if he induces the breach for his own personal gain. *Potter v. Minskoff,* 2 A.D.2d 513, 156 N.Y.S.2d 872, 873-74 (4th Dep't 1956), aff'd, 4 N.Y.2d 695, 171 N.Y.S.2d 88 (1958); *Buckley v. 112 Central Park South,* supra, 136 N.Y.S.2d at 236-37. *Wendell v. Sleppin,* 7 Misc.2d 306, 160 N.Y.S.2d 228, 230 (Westchester 1957). Third, if the agent who induces the breach acts outside the scope of his authority, the privilege will not protect him from liability. Id. at 241-42; *Navarro v. Fiorita,* 271 A.D. 62, 62 N.Y.S.2d 730, 732 (1st Dep't 1946), aff'd, 296 N.Y. 783, 71 N.E.2d 468 (1947). Lastly, an agent who induces another to breach a contract may be held liable if he acted in bad faith or gave dishonest advice. *Buckley v. 112 Central Park South,* supra, 136 N.Y.S.2d at 237; *Restatement (Second) of Torts* sec. 772 (1977).

*Maroil, S.A.* at *3.

The court in *Anderson* confirmed the agency privilege applies only when the agent acts within the scope of its authority.  As the court explained: "Defendant relies upon the well-established rule that an agent cannot be liable for inducing its principal to breach a contract, as long as the agent acted on behalf of the principal and ***within the scope of its authority***."  *Anderson v. Aset Corp.* 329 F. Supp. 2d 380, 384 (W.D.N.Y. 2004) (emphasis added), *aff'd* 416 F.3d 170 (2d Cir. 2005).

Here, any defense that depends on the scope of Realization Services' authority cannot be resolved at the pleading stage.  Whether Realization Services acted within the scope of its authority as to Digital River is a factual question that must be explored through discovery—particularly because Realization Services did not attach its contract with Digital River to its motion.  Similarly, any alleged independent torts by Realization Services, such as potential conversion of funds, warrant factual development.  If Realization Services intends to invoke the agency privilege, Next Level Racing must be permitted discovery into the actual scope of that authority.

### C.    Next Level Racing's Complaint is Sufficient to Overcome Realization Services' Asserted Economic Interest Defense as an Owner

Realization Services' invocation of the economic interest defense also fails at the pleading stage in light of Next Level Racing's allegations of malice and illegality.

#### 1.    Courts Are Reluctant to Address an Economic Interest Defense in a Motion to Dismiss

A recent Second Circuit decision highlights the division among courts as to whether the economic interest defense can be resolved on a motion to dismiss under Rule 12(b)(6):

Courts are divided on whether the economic interest defense is an affirmative defense not properly considered on a motion to dismiss. *Compare, e.g., Barnet*, 2014 WL 4393320, at *23 ('[T]he so-called "economic interest" defense is an affirmative defense that is not properly addressed on a motion to dismiss.'); *Hildene Cap. Mgmt., LLC v. Friedman, Billings, Ramsey Grp.*, No. 11-cv-5832, 2012 WL 3542196, at *9 (S.D.N.Y. Aug. 15, 2012) ('Several courts in the Second Circuit have refused to apply the economic interest defense at the pleading stage to dismiss complaints for tortious interference with contract, explaining that the facts of the pleadings were not sufficiently developed to show entitlement to the defense.'), *with, e.g., U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-cv-4044, 2019 WL 4744220, at *8 (S.D.N.Y. Aug. 26, 2019) ('The economic interest defense to a claim of tortious interference with contract may be raised at the motion to dismiss stage.').

*SOL-MM III*, 2025 WL 936414 at *20.  In *Barnet*, the court declined to apply the economic

interest doctrine where the defendants contended that they undertook actions to repay loans

to affiliated entities.

[The plaintiffs] have alleged each of the required elements of a claim for tortious interference with contractual relations: according to the complaint, OA was a party to valid and enforceable contracts with intercompany debtors in the Stella Group; defendants had knowledge of this arrangement; by diverting a portion of the Stella Sale Proceeds and rendering OA insolvent, ***defendants caused companies within the Stella Group to actually breach repayment obligations*** under these contracts; and OA suffered damages in excess of $209 million. (Compl.¶¶ 285–290) Defendants' attempt to recharacterize plaintiffs' allegations in terms of defendants' own interest in the repayment of the Castle Facility ***improperly asserts factual arguments in the context of a motion to dismiss***. Accordingly, defendants' motion to dismiss this claim is denied.

*Barnet*, 2014 WL 4393320, at *23 (emphases added); *see also R. L. Mlazgar Assocs., Inc.*

*v. Focal Point, L.L.C.*, No. 22-CV-942 (NEB/DJF), 2024 WL 4544097, at *8 (D. Minn.

June 14, 2024) (declining to dismiss tortious interference claim after holding that whether

defendants' alleged misappropriation was justified was a question of fact that the defendant

must prove); *Braden*, 588 F.3d at 585 ("A plaintiff need not plead facts responsive to an affirmative defense before it is raised.").

In *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, the court denied a motion to dismiss based on the justification defense and allowed discovery to proceed. As the court explained: "Ordinarily, whether interference is justified is an issue of fact, and the test is what is reasonable conduct under the circumstances. Discovery will assist in revealing if [defendant]'s interference was wrongful and unjustified . . . . " 164 F. Supp. 3d 1117, 1138 (D. Minn. 2016) (internal citation and quotation omitted).

Accordingly, Next Level Racing respectfully requests that the Court deny Realization Services' motion to dismiss and permit the parties to proceed with discovery and factual development of the case.

### 2. Even if the Court Considers the Economic Interest Defense, Next Level Racing's Allegations of Realization Services' Malice Defeat any Economic Interest Defense

Realization Services argues that its interference with the contract between Digital River and Next Level Racing was permitted by the economic interest defense. However, as with the agency privilege defense, allegations of malice defeat that protection.

"In New York, a defendant may raise 'the economic interest defense—that it acted to protect its own legal or financial stake in the breaching party's business'—in response to a claim for tortious interference. 'The economic interest defense is unavailable, though, where there has been a "showing of either malice on the one hand, or fraudulent or illegal means on the other."'" *SOL-MM III LLC*, *supra*, at *20 [citations omitted]. "The pursuit of 'economic interest' can suffice—'*unless there is a showing of malice or illegality*.'"

14

*Rich*, 939 F.3d at 129 (internal citation omitted); *see also Seagrape Investors LLC v. Tuzman*, No. 21-CV-7517 (RA), 2024 WL 4337448, at *13 (S.D.N.Y. Sept. 26, 2024) (holding that the defendant allegedly engaged in a fraudulent conveyance so the economic interest defense did not bar the claim for tortious interference with contract).

In *EPAC Technologies Ltd. v. Interforum S.A.*, 217 A.D.3d 623 (N.Y. App. Div. 2023), the court held that the plaintiff had stated a valid claim for tortious interference with contract. Although the plaintiff's allegations admitted that the defendants had "'***acted to protect [their] own legal or financial stake in the breaching part[ies'] business***,' thereby invoking the economic interest defense," the plaintiff "also alleged facts sufficient to overcome this defense—i.e., that [defendants] instructed the breaching parties to employ fraudulent or illegal renegotiation tactics … and ***demonstrated malice by instructing nonpayment of monies duly owed*** . . . ." *Id*. at 624 (emphases added).

Even the case law cited by Realization Services in its motion to dismiss confirms that allegations of malice, fraud, or illegality defeat the economic interest defense. *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 29–30 (S.D.N.Y. 2017) ("As a result, New York courts have developed the 'economic interest defense' to claims of tortious interference with contract. The defense applies when the defendant 'acted to protect its own legal or financial stake in the breaching party's business.' *Id*. ***Unless there is a showing of malice or illegality***, a defendant's economic interest in the breaching party's affairs bars an action for tortious interference with contract.") (emphasis added), *aff'd* 712 F. App'x 85 (2d Cir. 2018).

Realization Services also cites to *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978 (8th Cir. 2008). In *Noble*, the defendant was a secured creditor with higher priority than the plaintiff. *Id.* at 983. As the Eighth Circuit noted, "[Plaintiff] cannot dispute that [defendant] was the highest-priority creditor." *Id.* The court ultimately held there was no actual interference or bad faith—only prioritization among creditors. However, the court also emphasized that "[b]ad faith can constitute evidence that the defendant's conduct was not justified." *Id.* at 983 (*citing Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 507 (Minn. 1991)).

The *Noble* court further cited to *Thompson v. U.S.*, 408 F.2d 1075 (8th Cir. 1969), as an example of tortious interference arising from bad faith, even where the conduct was otherwise lawful. There, a partnership's unauthorized withdrawals from accounts it controlled—including to pay attorneys' fees—were held to constitute tortious interference with the contract rights of a party holding security interests in an apartment project. *Id.* at 1084. The court explained: "To … validate these withdrawals would deny the claim of the party having security in the assets of the project in favor of defaulting entrepreneurs who happened to have immediate control over the checkbook." *Id.* at 1080–1081.

Realization Services also cites to *Ascente Business Consulting, LLC v. DR MyCommerce*, where Digital River argued that, as a parent company, "it is justified in interfering with DRM's contracts, provided it does not use wrongful means." No. 18-CV-138 (JNE/KMM), 2018 WL 3597674, at *6 (D. Minn. July 26, 2018). The decision—arising out of Digital River's own prior litigation—confirmed that a parent company may not interfere with the subsidiary's contracts by wrongful means or with improper purpose.

16

*Id.* at *6 (*citing Phil Crowley Steel Corp. v. Sharon Steel Corp.,* 702 F.2d 719, 722 (8th Cir. 1983) ("A corporation with a financial interest in another corporation is deemed to be justified unless it is shown that the parent employed wrongful means or acted with an improper purpose."); *see also James M. King & Assocs., Inc. v. G.D. Van Wagenen Co.*, 717 F. Supp. 667, 681 (D. Minn. 1989) ("[A] parent is privileged to, or justified in, interfering with the contracts of its wholly-owned subsidiary provided it does not use wrongful means and acts to protect its economic interests.").

Realization Services is a liquidation consulting company that acquired ownership of Digital River as part of that consulting arrangement. (Complaint ¶¶ 26, 28, 30, 33.) As discussed in Section C.1, Next Level Racing has alleged that Realization Services acted with malice. In particular, Next Level Racing alleges that Realization Services directed Digital River to wrongfully retain funds belonging to Next Level Racing—funds that Digital River had no contractual right to keep—including amounts exceeding the terms of the agreement and funds collected after the contractual relationship had ended. (Complaint ¶¶ 23-24, 32-33, 42.)

For these reasons, and those discussed above, Next Level Racing respectfully requests that the Court reject Realization Services' reliance on the economic interest defense and deny its motion to dismiss the tortious interference claim.

### 3.    Realization Services' Alleged Ownership Role Is Too Uncertain to Support Its Motion to Dismiss

Realization Services also argues that it cannot be liable for interference due to its alleged ownership interest in Digital River.[3]  But in addition to the allegations of malice—which independently defeat the economic interest defense—Realization Services has not demonstrated that it acquired a sufficient ownership interest to inherit the same or similar contractual obligations as Digital River.  This defense is more appropriately addressed after discovery.

"'One asserting a tortious interference claim must also show that the defendant was not a party to the contract with which he allegedly interfered.'"  *CoraMed USA, LLC v. Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 267 (E.D.N.Y. 2023) (citation omitted).  The general principle that only a stranger to a contract can be liable for tortious interference derives from cases where the alleged interfering party shared the same or similar contractual obligations as the breaching party.  *Arena Investors, L.P. v. DCK Worldwide Holding Inc.*, 215 A.D.3d 155, 157 (N.Y. App. Div. 2023).  "The rationale is that the 'plaintiff ha[s] an adequate remedy for breach of contract [since the] defendant [is] alleged to have breached its own duties to [the] plaintiff under the contract.'"  *CoraMed USA, LLC*, at 267 (*citing Arena Invs., L.P.*, 215 A.D.3d at 158).  However, where the parties' obligations are distinct, the defense does not apply.  "When breaching and inducing parties

---

[3]    While Realization Services accepts for purposes of its Motion the allegations of an ownership interest in Digital River, Realization Services' Motion also contends that it does not actually possess a "direct ownership" interest in either Digital River entity, instead claiming that Realization Services and the Digital River entities share an unnamed common owner.  (Dkt. 23 at 3, fn. 1.)

have different rights and duties, if the plaintiff is unable to recover fully from the breaching party, a tortious interference claim against the inducing party may be necessary for the plaintiff to be made whole." *Id*. at 158.

Next Level Racing has alleged that Digital River and Realization Services are separate entities; that Next Level Racing entered into contracts with Digital River in 2021 and 2022 (Complaint ¶¶ 13-15, Exhibits 1-3); that Realization Services was never a party to those contracts (*id*.); and that Realization Services did not become involved with Digital River as a liquidation consultant with an ownership interest until July 2024—at the same time it interfered with the contracts (Complaint ¶¶ 26-28). Realization Services did not acquire ownership to protect an existing interest but rather to effect its interference. At this stage, Realization Services has offered no explanation as to the precise economic interest it was allegedly serving—particularly as Digital River has since to ceased operations. (Complaint ¶ 32.)

Realization Services argues that it cannot be liable for interference because of its alleged ownership interest in Digital River. But it does not assert—let alone demonstrate— that its obligations to Next Level Racing were equivalent to those owed by Digital River. The nature and scope of Realization Services' acquired obligations and liabilities are too uncertain at the pleading stage to support dismissal based on the economic interest defense.

Realization Services cites to several cases in support of its position that an entity with an ownership interest cannot be liable for tortious interference. However, each of those cases involved materially different facts. *Envy Branding, LLC v. William Gerard Group, LLC,* , No. 20-CV-03182 (JLR), 2024 WL 869156, at *1 (S.D.N.Y., Feb. 29, 2024),

was a summary judgment case after parties has an opportunity to explore ownership. *Bradbury v. Israel*, 204 A.D.3d 563, 564 (N.Y. App. Div. 2022), involved an individual defendant who was the sole owner and operator of the third-party entity that was alleged to have interfered. *Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02-cv-04635 (RPP), 2003 WL 1961636, at *5 (S.D.N.Y. Apr. 25, 2003), involved a wholly-owned subsidiary for all relevant time periods. *MTI/The Image Group, Inc. v. Fox Studios East, Inc.*, 262 A.D.2d 20, 23-24 (N.Y. App. Div. 1999), involved parents and sister companies with a demonstrated financial interest but where the court noted that the plaintiff failed to demonstrate malice.

The very cases cited by Realization Services underscore the deficiencies in its position. Realization Services is not alleged to have been the sole owner of Digital River; Digital River is not alleged to have been a wholly-owned subsidiary; and there is no indication that Realization Services held any ownership interest in Digital River prior to the alleged interference. Nor has Realization Services confirmed that it assumed any of Digital River's contractual obligations to Next Level Racing. Rather, it served as a liquidation consulting firm that acquired an ownership interest in Digital River solely to effect its interference at issue—conduct that allegedly involved the unlawful and malicious retention of funds from Next Level Racing and other merchants.

For all of these reasons, and those discussed above, Next Level Racing respectfully requests that the Court reject Realization Services' contention that its alleged ownership interest justified its interference with the agreement between Digital River and Next Level Racing.

**V.    Next Level Racing Has Successful Pled a Claim for Unfair Business Practices**

**A.    Next Level Racing Has Pled Consumer Conduct**

New York General Business Law Section 349 prohibits unfair and deceptive business practices.  Realization Services argues that its conduct—directing Digital River to wrongfully collect and withhold payment from Next Level Racing and others—did not constitute the type of "consumer-oriented conduct" required under the statute.  But Section 349 is far broader than Realization Services acknowledges.  Next Level Racing qualifies as a consumer under the statute, and Realization Services' conduct constitutes wrongful, consumer-oriented behavior within the meaning of Section 349.

"[A]s a threshold matter, plaintiffs claiming the benefit of section 349—whether individuals or entities such as the plaintiffs now before us—must charge conduct of the defendant that is consumer-oriented."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

> Section 349 on its 'face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad.' *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 712 N.E.2d 662 (1999) (footnote omitted). Its reach 'provides needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State.' *Id.* (quoting N.Y. Dep't of Law, Mem to Governor, 1963 N.Y. Legis Ann, at 105). … 'The "consumer-oriented" requirement may be satisfied by showing that the conduct at issue **potentially affects similarly situated consumers**." ' … 'The requirement that defendants engaged in "consumer-oriented" conduct has been construed liberally.' *White v. Fein, Such and Crane, LLP*, 2015 WL 6455142, at *6 (W.D.N.Y. Oct. 26, 2015).

*McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 254 (W.D.N.Y. 2019) (emphasis added).  In *McCrobie*, the plaintiff was a credit card consumer, and therefore,

21

according to the court, a member of the "consuming public." *Id*. at 254. Because the conduct directed toward the plaintiff could have been typical of the defendant's business practices, the defendants' actions may well have a broader impact on the public at large. *Id*. at 255.

The protections and relief under New York General Business Law Section 349 are not limited to individuals. *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 338 F. Supp. 2d 422, 428 (E.D.N.Y. 2004) (holding that small business owners qualified as "consumers" within the meaning of the statute). *Oswego*, 85 N.Y.2d at 22, dealt with claims asserted by two union funds–not individuals. Moreover, "consumer-oriented conduct does not require a repetition or pattern of deceptive behavior." *Id*. at 25. Instead, Section 349 "was intended to 'afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds.'" *Id*.

Next Level Racing was a consumer of the services provided by Digital River and subsequently directed by Realization Services. Realization Services' conduct constituted unfair business practices, including directing Digital River to continue to collect funds from Next Level Racing that did not belong to it. (Complaint ¶¶ 63-68.)

The harm is not limited to Next Level Racing. Next Level Racing further alleges that Realization Services engaged in a similar course of conduct with other merchants, directing Digital River to acquire and retain funds from its e-commerce clients to which it had no legal entitlement. (Complaint ¶¶ 12, 18, 29, 32.) For example, Next Level Racing alleges that Realization Services instructed Digital River to "pre-sign" revised Master Services Agreements for customers—without the approval—to impose more favorable

terms for itself, including increased fees and delayed payments to the merchants. (Complaint ¶ 32.)

Additional lawsuits have already been filed by similarly situated merchants. *See*, *e.g.*, *Rec Room Inc. v. Digital River, Inc. & Digital River Ireland Ltd.*, filed Feb. 4, 2025, in Minnesota State Court, Case No. 27-CV-25-2234; *Her Interactive, Inc. v. Digital River, Inc.*, filed Feb. 5, 2025, in Minnesota State Court, Case No. 27-CV-25-2273; *Google LLC v. DR GlobalTech, Inc. & Digital River Ireland Ltd.*, filed Nov. 20, 2024, in New York State Court, Case No. 0659198/2024.[4]

Next Level Racing also anticipates that discovery will reveal a broader pattern of misconduct affecting a wide range of consumers. These practice include Realization Services' direction to Digital River to pre-sign and alter contractual terms without consumer consent, to impose "temporary" holdbacks, and to retain funds even after contract termination—all actions that unfairly increased fees and withheld payments owed to merchants.

## VI.    Conclusion

Next Level Racing has properly asserted a cause of action for tortious interference with contractual relations. While Realization Services contends any interference was justified and privileged, Next Level Racing's allegations of malice overcome both the agency and economic interest defenses. Realization Services directed Digital River to

---

[4]    Next Level Racing requests that the Court take judicial notice of the complaints and related filings in these matters. Fed. R. Evid. 201(b); *Zimmerman v. Bellows*, 988 F. Supp. 2d 1026 (D. Minn. 2013) (court took judicial notice of state-court docket).

wrongfully and intentionally retain funds beyond the scope of the parties' agreement—including funds collected after the termination of the contract. Other elements required to establish Realization Services' claimed justification—such as whether it acted within the scope of any alleged agency authority—are, at best, premature and must be tested through discovery.

With respect to Next Level Racing's claim for unfair business practices, the Complaint adequately alleges that Next Level Racing qualifies as a consumer and that Realization Services engaged in wrongful, widespread, consumer-oriented conduct. This alleged misconduct has impacted numerous other merchants, several of whom have already initiated litigation.

For all of the reasons set forth above, Next Level Racing respectfully requests that the Court deny Realization Services' motion to dismiss.

Dated: May 19, 2025                    Respectfully submitted,

                                       By: */s/ Benjamin W. Hulse*
                                       Benjamin W. Hulse (MN #0390952)
                                       Sheila S. Niaz (MN #0401884)
                                       Norton Rose Fulbright US LLP
                                       60 South Sixth Street, Suite 3100
                                       Minneapolis, MN 55402
                                       Phone: (612) 321-2800
                                       ben.hulse@nortonrosefulbright.com
                                       sheila.niaz@nortonrosefulbright.com

                                       Shane M. Maguire (*pro hac vice*)
                                       Jessica M. Wan (*pro hac vice*)
                                       Ferguson Case Orr Paterson LLP
                                       1050 South Kimball Road
                                       Ventura, CA  93004
                                       Phone: (805) 659-6800
                                       smaguire@fcoplaw.com
                                       jwan@fcoplaw.com

                                       ***Attorneys for Plaintiff Next Level Racing LLC***